EDWARD L. BLOOM, Respondent, v. CHARLES R. POPE, Appellant.

St. Louis Court of Appeals, May 14, 1889.

1. **Damages : BREACH OF CONTRACT : NON-SUIT.** In an action for damages for the breach of a contract, an instruction of non-suit on the ground that the plaintiff's evidence failed to show a breach of the contract, is properly refused where the defendant's answer admits the breach and alleges the reasons therefor.

2. **Instructions : MISLEADING ONES MAY NOT BE GROUND FOR REVERSING THE JUDGMENT.** An instruction, which presents to the jury the precise issue tendered by the defendant, is not, on the defendant's appeal, ground for reversing the judgment, although it might mislead the jury.

3. ———— : QUESTIONS NOT AT ISSUE. An instruction, abstractly correct as a.legal proposition, is properly refused where it does not present the exact question raised by the pleadings, and where an instruction which presents the precise question at issue has been given.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

*William C. & James C. Jones*, for the appellant.

The respondent's own evidence shows that he never was discharged by the appellant, but that he voluntarily abandoned the service and never thereafter tendered his services to appellant, and the instruction for nonsuit should have been given at the close of respondent's case. For the same reason this instruction should have been given at the close of the case. *Henson v. Hampton,* 32 Mo. 409; *Posey v. Garth,* 7 Mo. 96; *Polk v. Daly,* 14 Abb. Pr. ( N. S.) 156 ; *Schnerr v. Lemp,* 19

Mo. 40 ; *Earp v. Tyler*, 73 Mo. 617. "If the person who has agreed to render personal services for a stated period leave the service of his employer, he can not recover for the value of the services rendered." *Hanel v. Freund*, 17 Mo. App. 623 ; *Downs v. Smit*, 15 Mo. App. 583 ; *White v. Wright*, 16 Mo. App. 551 ; *Fox v. Pullman*, 16 Mo. App. 122 ; *Edwards v. Myers*, 22 Mo. App. 481 ; *Cramer v. Mack*, 8 Mo. App. 532. Although the respondent may have been ill prior to the time of entering on the starring tour and prior to the date of the contract, yet if he had recovered sufficiently, or supposed, and had been advised, that he had recovered sufficiently, to perform the duties of said tour, but subsequently became too ill to do so, then he is excused from liability for non-performance. This rule was not fairly stated in the court's instructions, while it was fairly stated in the instructions asked by the appellant. *Robinson v. Davison*, L. R. 6 Exch. 269 ; *Taylor v. Caldwell*, 3 B. & S. 826 ; *Spaulding v. Rosa*, 71 N. Y. 41 ; *Clark v. Gilbert*, 26 N. Y. 279 ; *People v. Manning*, 8 Cow. 297 ; *Wolfe v. Howes*, 24 Barb. 174, 666 ; s. c., 20 N. Y. 197 ; *People v. Tubbs*, 37 N. Y. 586 ; *Fenton v. Clark*, 11 Vt. 557 ; *Fuller v. Brown*, 11 Metc. 440 ; *Beebe v. Johnson*, 19 Wend. 502 ; *Fahy v. North*, 19 Barb. 341 ; *Ryan v. Dayton*, 25 Conn. 188. Where the contract contemplates services of a personal nature death or sickness determines the contract. *Stumpf's Appeal*, 8 At. Rep. 866. The case of *Taylor v. Caldwell*, *supra*, is cited and approved in *Bank v. Beal*, 141 Mass. 566 ; *Ellis v. Insurance Co.*, 108 U. S. 342 ; *Walker v. Tucker*, 70 Ill. 527. The court improperly refused to instruct the jury on the second defense set up in the appellant's answer, *i. e.*, the question of discharge, and hence took that question from their consideration. These defenses were not inconsistent. There was an abundance of evidence to prove both defenses, and both should have gone to the jury.

*Nelson v. Broadhack*, 44 Mo. 596 ; *Ledbetter v. Ledbetter*, 88 Mo. 63. "Defenses are inconsistent only when the proof of one contradicts the other." *Cohn v. Lehman*, 93 Mo. 583 ; *McAdow v. Ross*, 53 Mo. 203. " It is only when if one defense be true and the other must necessarily be false that the defendant can be required to elect." *Keane v. Kyne*, 2 Mo. App. 321. "Two statements in an answer are not inconsistent under our system of pleading if both may be true in fact." *Moore v. Bank*, 22 Mo. App. 694. But even if the defenses were inconsistent, and the foregoing citations show that they were not, still the court erred in arbitrarily refusing to instruct on the second defense without giving us an opportunity to elect upon which defense we would go to the jury. In *Smith v. Culligan*, 74 Mo. 389, the defenses were inconsistent, and on motion the " defendant was required to elect on which defense he would stand." *Patrick v. Gas Co.*, 17 Mo. App. 465. " The rule is that where two defenses are pleaded the defendant can not be driven to an election, where both may be true," citing *Keane v. Kyne, supra. Lee v. Dodd*, 20 Mo. App. 274.

*Alex. Young* and *Chester H. Krum*, for the respondent.

BIGGS, J., delivered the opinion of the court.

This is an action for damages arising out of an alleged violation of a contract between the plaintiff and the defendant.

The plaintiff averred that in September, 1886, the defendant was about to start on a theatrical starring tour and employed the plaintiff as his advance agent for the period of twenty weeks at a salary of one hundred dollars per week, out of which the plaintiff was to pay the salary of a lithographer ; that he entered upon the discharge of his duties under said contract, and so continued until the eleventh day of October, 1886, when the defendant discharged the plaintiff and refused to

allow him to complete the contract although the plaintiff was ready and willing to do so. That the defendant had only paid the plaintiff the sum of $272.90. That the plaintiff had expended the sum of thirty-five dollars in procuring employment for himself and lithographer after his discharge, and that after giving the defendant credit for the amount paid and also for the amounts received by the plaintiff from other employments during said time and after his discharge, there was a balance due the plaintiff of $1,162.

The answer admitted the employment of the plaintiff for the purposes stated, and then alleged that the defendant was the leading actor of the theatrical company, and that the defendant's services, in the performances to be given, were indepensable. That the tour was entered upon and continued for four weeks, when the defendant became too ill to perform the duties of leading actor of said company. That these duties were personal and could not be performed by others by reason of which the defendant was compelled to abandon the tour. That by reason of the defendant's sickness the object of the defendant's contract with the plaintiff became impossible of attainment, and that it was impossible for the defendant to carry out his contract with the plaintiff. After interposing the above matter as a defense the defendant inserted the following: "The defendant further states that the plaintiff voluntarily, and of his own free will, abandoned the employ of the defendant without the consent of the defendant."

The plaintiff for reply denied that the defendant was compelled to abandon his theatrical tour on account of sickness, but alleged that the theatrical venture was abandoned because of financial losses sustained by the defendant on account of it, and also on account of adverse criticisms by the press of the defendant as an actor.

The case was submitted to a jury, resulting in a verdict for the plaintiff of $1,280.60

Within the time prescribed by law the defendant filed his motion for a new trial, alleging the usual grounds, which being by the court overruled, he has brought the case to this court for review, and urges the following reasons why the judgment should be reversed :

*First.* That the defendant's instruction for non-suit should have been given, because the plaintiff admitted, that he voluntarily abandoned the defendant's services and never thereafter tendered his services to the defendant.

*Second.* That under the instructions given by the court on its own motion, the defendant's illness, in order to excuse him for a failure to perform his contract with the plaintiff, must have commenced *after* the contract was entered into and the tour begun.

*Third.* Because the court refused to instruct the jury on the second defense set up in the defendant's answer, to-wit, that the plaintiff had voluntarily quit the defendant's employ and had never been discharged by the defendant.

It is conceded that the plaintiff fully performed the contract until the defendant abandoned his tour and returned to St. Louis. Thereupon the plaintiff was advised by telegram, that the defendant had given up the business and was instructed to cancel all engagements and come to St. Louis. The plaintiff acted as directed and reported to the defendant. The plaintiff remained in St. Louis several days and during this time he and the defendant had several interviews and endeavored to come to an understanding, but failed. The plaintiff testifies that, at one of the interviews, he offered to serve the defendant at his theatre in the city of St. Louis, but the proposition was not accepted by the defendant; that the last time he saw the defendant the latter agreed to see his attorney and made an engagement to meet the plaintiff the next day at two o'clock and settle the business; that the defendant failed to

keep the engagement and thereupon the plaintiff left for New York. On the plaintiff's cross-examination, he was asked this question :

"Q. When were you discharged by Mr. Pope?" "A. I have not been discharged to this day." Upon *this* answer of the plaintiff, the defendant predicates his first assignment of error, to-wit: That the defendant's motion for non-suit should have been given ; and also the defendant's instruction to the effect that, if the plaintiff voluntarily left the defendant's service, he could not recover in this action.

We can not yield our assent to the correctness of either one of these propositions.

The position assumed by the defendant is contrary and inconsistent, not only with his answer, but with his own testimony as well. The defendant in his answer says, that he employed the plaintiff as his advance agent, and that it became *impossible* for *him* to carry out his contract with the plaintiff on account of his (the defendant's) *illness.*

The defendant in his testimony admits that he instructed the plaintiff to cancel all engagements and to come to St. Louis ; that he then informed the plaintiff that he was *compelled* to *abandon* the theatrical tour on account of his health. In view of this answer and the defendant's own statement, we can not see, how it can be claimed by the defendant, that the plaintiff voluntarily abandoned his service, or that the plaintiff was not entitled to recover because he did not hold himself in readiness to complete the contract, if called on by the defendant.

That the plaintiff was prevented from completing the contract by the defendant, is beyond dispute, and the only possible defense available to the defendant under the evidence was, that he was excused from performance by his serious illness, which, under the circumstances, rendered the fulfillment of the contract on

his part impossible. The court, on its own motion, instructed the jury as follows: "Unless you believe, from the evidence, that, *after* the making of the contract sued on, and *after* the starring tour in question had begun, the defendant's *health gave way* and he became sick to such an extent as to render him unable to act, and that on account of such sickness or failure of his health, the defendant abandoned the said starring tour, then you should find for the plaintiff and assess his damages at the whole amount of the contract price of his wages, less such sum as he received on account of such contract, and such further sum as the evidence shows he earned and received from other employment; and to such sum as you may so find add interest at six per cent. from February 21, 1887, to this date."

"If you believe, from the evidence, that *after* Mr. Pope began his starring tour, his health gave way, and that he became, on account of ill health, unable to perform the duties that devolved on him as an actor on said tour, or that the further continuance thereof would have endangered his life, and that said enterprise and starring tour was abandoned by Mr. Pope only because of his serious bodily ailments, then the plaintiff is entitled to a verdict for the sum of $127.10, and interest thereon at six per cent. per annum from the twenty-first day of February, 1887, to the twelfth day of April, 1888."

The defendant asked the court to give the following instruction, which was refused, to-wit: "If the jury believe and find from the evidence, that Mr. Pope, by reason of severe illness, was prevented from carrying on and prosecuting his starring tour, or that the further continuance thereof would have endangered his life, and that said enterprise and starring tour were abandoned by Mr. Pope only because of his serious bodily ailments, that

Bloom v. Pope.

the plaintiff is entitled to a verdict for the sum of $127.10 only, the amount admitted by both parties to have been due at that time."

The defendant excepted to the action of the court in giving and refusing the foregoing instructions.

The defendant's family physician testified that at the time the defendant returned to St. Louis and abandoned his theatrical tour, he was seriously troubled with a complication of bodily ailments, which made it impossible for the defendant to perform the duties of chief actor for his company without endangering his life; that he treated him for the same troubles during the years 1884 and 1885; that the ailments of which the defendant suffered unfitted him for the arduous duties of an actor in the characters essayed by the defendant.

The defendant, on his cross-examination, admitted that he had been so afflicted in 1884 and 1885, but that in the spring of 1886 he went East, and was there for some months under treatment, and that during this time he submitted to an operation, which was apparently quite successful, and that before entering into his contract with the plaintiff, he believed, and his physician gave it as his opinion, that he was permanently cured and that he had so far recovered his health and strength as to enable him to successfully perform the duties of chief actor in his theatrical company; that he employed the plaintiff in good faith, believing at the time that he had the physical strength to carry his theatrical venture through, but after a trial of four weeks, he was prostrated with his old maladies, on account of which he was compelled to abandon the business. The plaintiff gave evidence tending to show that Pope's starring tour was a financial failure and inferential evidence that the failure of his health was not the cause of its termination.

The instructions given by the court directed the jury that the verdict must be for the plaintiff, unless

they found, from the evidence, that the defendant's health gave way *after* the making of the contract.

The defendant contends that he was greatly preju-diced by this instruction ; that it required the jury to find that the defendant's health 'gave way *after* the making of the contract and wholly ignored the facts testified to by him to the effect, that he was troubled with chronic disorders long prior to the making of this contract ; that he had submitted to a surgical opera-tion which was, apparently, very successful, and that, at the time he made this contract, his physician informed him, and he ( the defendant ) believed, that he was entirely cured and was physically able to conduct the business to a successful conclusion; but after per-forming for a few weeks he was prostrated with his old maladies, and by reason of this he was unable to carry out his contract without endangering his life. The defendant's counsel urged that this instruction was calculated, and evidently did, mislead the jury, as all of the defendant's own testimony tended to prove that while the defendant's ill health did not become appar-ent until after he started on his *starring* tour, yet, as a matter of fact, he was unable, physically, to carry out his part of the contract at the time it was made ; but that the defendant had made the bargain in good faith, believing that he had been permanently cured.

We may concede that this instruction was mislead-ing, and yet, under the pleadings in this case, we can not put the trial court in the wrong. The instruc-tion, as written, presents to the jury the precise issue tendered by the defendant in his answer.

The defendant, in his amended answer, says : "That in pursuance of the terms of said contract, the plaintiff, on the thirteenth day of September, 1886, entered into the performance of his duties as the defendant's advance agent or manager for said starring tour ; that he continued in such employment for the

space of four weeks ; that, at the end of said four weeks, the said starring tour was abandoned by the defendant on account of the *loss* of his health ; that the *defendant* at said *time became so ill* as to be unable to perform the duties that devolved upon him as the leading actor," etc.

Under the pleadings, we do not think the court was authorized to present any other view in its instructions to the jury. The instruction asked by the defendant was properly refused. We will have to affirm the judgment. All the judges concur.